United States District Court
Southern District of Texas
**ENTERED**
June 25, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DENNIS WAYNE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00255 |
| | § | |
| MARTIN O'MALLEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Dennis Wayne Johnson filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny his application for disability insurance benefits. Now pending are Johnson's and the Commissioner's construed cross-motions for summary judgment and briefing. (D.E. 7, 8, 11). Johnson contends that the ALJ failed to properly explain why the residual functional capacity ("RFC") determination omitted all mental limitations despite the ALJ's earlier conclusion that Johnson had mild mental limitations. For the reasons discussed further below, it is recommended that Johnson's motion (D.E. 7) be **GRANTED**, the Commissioner's motion (D.E. 8) be **DENIED**, and the Commissioner's denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

## I. JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Johnson resides in Live Oak County, Texas. 42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

## II. BACKGROUND & ADMINISTRATIVE RECORD

### a. Application and Hearing

In March 2021, Johnson filed an application for disability insurance benefits, alleging a disability commencing on December 31, 2020. (D.E. 6 at 188). Johnson claimed that his rheumatoid arthritis, osteoarthritis, post-traumatic stress disorder ("PTSD"), clinical depression, degenerative disc disease, tinnitus, and vertebral compression fracture limited his ability to work. (*Id.* at 195). The Commissioner denied Johnson's application both initially and on reconsideration. (*Id.* at 81-82).

In the Disability Determination Explanation at the initial stage, state medical consultant Dr. Michael Regets concluded that Johnson's inflammatory arthritis and depressive, bipolar, and related disorders were severe impairments. (*Id.* at 68). When considering the Paragraph B criteria, Dr. Regets concluded that Johnson had a moderate limitation in his ability to interact with others, and a mild limitation in his abilities to: (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage himself. (*Id.* at 68-69). In assessing Johnson's mental RFC, Dr. Regets concluded that Johnson was moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) complete a normal

workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public and to accept instructions and respond appropriately to supervisors; and (5) travel in unfamiliar places or use public transportation. (*Id.* at 74-77). Dr. Regets concluded that Johnson was not significantly limited in any other areas. (*Id.*). Specifically, Dr. Regets determined that Johnson was "maximally able to understand, remember and carry out detailed but not complex instructions, make decisions and attend and concentrate for extended periods. Claimant can accept instructions and respond appropriately to changes in a routine work setting." (*Id.* at 77).

In the Disability Determination Explanation at the reconsideration stage, state medical consultant Dr. George Grubbs concluded that Johnson's inflammatory arthritis and depressive, bipolar, and related disorders were severe impairments. (*Id.* at 85). When considering the Paragraph B criteria, Dr. Grubbs concluded that Johnson had mild limitations in all four areas of mental functioning. (*Id.* at 86). When discussing the medical evidence regarding Johnson's mental impairments, Dr. Grubbs concluded that the medical evidence of record and Johnson's activities of daily living did not appear severe at the time. (*Id.* at 86-87). No specific mental RFC assessment was conducted. (*Id.* at 88-89).

At a hearing before the ALJ on August 12, 2022, Johnson's mental impairments were not discussed. (*See id.* at 36-57). A vocational expert identified Johnson's past relevant work as a corrections officer and head corrections officer. (*Id.* at 58). The ALJ

asked the vocational expert whether several hypothetical persons with the same age, educational history, and work experience could perform Johnson's past relevant work or other work, but none of these hypotheticals included any mental limitations. (*Id.* at 58-61). Johnson's counsel did not ask the vocational expert any questions. (*Id.* at 61).

### b. Medical Records

Johnson regularly attended mental health therapy sessions between February 2, 2018, and October 6, 2022. (D.E. 6-1 at 156, 174; D.E. 6-2 at 4, 8, 48, 52, 63, 69-70, 84, 90, 96; D.E. 6-3 at 69, 138; D.E. 6-4 at 92, 94, 102, 109, 112, 156, 159, 163, 181, 184, 188, 192, 197; D.E. 6-5 at 31, 49, 56, 58-59, 74, 79, 82, 85, 89-90, 92-93, 111, 124, 147, 149, 152, 155, 158, 171, 198; D.E. 6-6 at 2, 5, 11, 22, 39, 64, 71, 76, 146, 179; D.E. 6-7 at 2, 56, 77, 114, 136, 159). At these appointments, his mental status was generally found to be normal with appropriate appearance, good eye contact, clear speech, euthymic mood with appropriate affect, a clear, logical, and goal directed thought process, no evidence of suicidal intent or delusions, and intact judgment. (D.E. 6-1 at 156; D.E. 6-2 at 8, 48, 52, 63, 69-70, 84, 90, 96; D.E. 6-4 at 92, 94, 102, 109, 112, 156, 159, 163, 181, 184, 188, 192, D.E. 6-5 at 31, 49, 56, 58-59, 74, 79, 82, 85, 89-90, 92-93, 111, 124, 147, 149, 152, 155, 158, 171, 198; D.E. 6-6 at 2, 5, 11, 22, 39, 64, 71, 76, 146, 179; D.E. 6-7 at 56, 77, 114, 136, 159). However, on May 22, 2019, Johnson's mood and affect were evaluated as slightly depressed following the death of his brother. (D.E. 6-4 at 197). On January 19, 2021, Johnson's mood was dysphoric "in setting of multiple contextual stressors and pain." (D.E. 6-2 at 4). On March 1, 2021, Johnson's mood was mildly dysphoric due to contextual

stressors. (D.E. 6-1 at 174). On April 13, 2021, Johnson's mood was mildly dysphoric "in setting of current contextual stressors," and he had low motivation and anhedonia. (D.E. 6-3 at 71). On April 8, 2022, Johnson completed a depression screening that came back positive for depression. (D.E. 6-7 at 7).[1] On April 11, 2022, Johnson's mood was "dysphoric in the context of pain burden." (*Id.* at 6). Johnson was diagnosed with PTSD and depression. (*See, e.g.,* D.E.6-5 at 47).

    *c. ALJ Decision*

On February 27, 2023, the ALJ issued an opinion concluding that Johnson was not under a disability since December 31, 2020. (D.E. 6 at 18-28). At the first step of the sequential evaluation process, the ALJ concluded that Johnson had not engaged in substantial gainful activity since December 31, 2020. (*Id.* at 20). At the second step, the ALJ concluded that Johnson had two severe impairments that limited his ability to perform basic work activities, including: (1) L4 and T2 compression fractures with moderate degenerative disc disease of the lumbar spine; and (2) rheumatoid arthritis. (*Id.* at 21). The ALJ concluded that Johnson's medically determinable impairments of PTSD and depression, "considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic work activities and are therefore nonsevere." (*Id.* at 22). The ALJ summarized the medical evidence regarding Johnson's mental impairments after December 31, 2020. (*Id.* at 22). In considering the Paragraph B criteria,

---

[1] This was not Johnson's only depression screening throughout the record to come back positive, but the most recent.

the ALJ concluded that Johnson had only mild limitations in all four areas of mental functioning. (*Id.* at 22-23). The ALJ noted that his consideration of the Paragraph B criteria was not an RFC assessment, which required a more detailed assessment. (*Id.* at 23).

At the third step, the ALJ concluded that Johnson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*). The ALJ concluded that Johnson had the residual functional capacity to perform the full range of light work. (*Id.* at 24). The ALJ stated that the medical evidence showed "few objective findings to support decreased mental or physical functioning." (*Id.*). Regarding Johnson's mental impairments, the ALJ found Dr. Regets's opinion on initial review unpersuasive because it was "not supported by objective findings documenting no severe deficits in memory and concentration and is inconsistent with the record showing the claimant had dysphoric mood at times due to pain and stressors and had otherwise euthymic mood and appropriate affect." (*Id.* at 27). He found Dr. Grubbs's opinion on reconsideration persuasive because it was consistent with Johnson's reports that medication was effective and supported by the lack of severe deficits in memory, concentration, insight, and judgment. (*Id.*).

At step four, the ALJ concluded that Johnson could perform his past relevant work as a head corrections officer as generally performed, which was skilled work. (*Id.*). Thus, the ALJ concluded that Johnson was not under a disability since December 31, 2020. (*Id.* at 28).

6

The Appeals Council denied Johnson's request for review of the ALJ's decision. (*Id.* at 5-7).

## III. DISCUSSION

In his motion for summary judgment, Johnson contends that remand is required because the ALJ's RFC determination failed to account for the mild mental limitations he found at step two of the sequential evaluation. (D.E. 7 at 2-3). Johnson argues that the ALJ is required to consider all medically determinable impairments when determining the RFC, including those that are non-severe, but failed to address these mild mental limitations at any time during the RFC assessment. (*Id.* at 4-6). He contends that having mild limitations is not the same as having no limitations, and the ALJ was required to at least address them in the RFC or explain why no limitations were included. (*Id.* at 6-12, 13-14). He asserts that this is particularly problematic because his past relevant work as a head corrections officers is a highly skilled, supervisory occupation that could be significantly affected by even mild limitations in mental functioning. (*Id.* at 12-13).

The Commissioner responds that the ALJ's assessment of the Paragraph B criteria is not an RFC assessment, and the ALJ was not required to include any mental limitations in the RFC despite finding mild limitations in each area of mental functioning when analyzing the Paragraph B criteria. (D.E. 8 at 3-5, 7-8). The Commissioner argues that the ALJ did reference Johnson's mental impairments in the RFC discussion by addressing both his subjective complaints and the opinions of the state medical consultants, but the ALJ concluded that the record did not support a finding that the mental impairments were

7

disabling. (*Id.* at 5-6). The Commissioner contends that the ALJ properly considered all the medical evidence in the record when reaching this conclusion, and the RFC assessment was supported by substantial evidence. (*Id.* at 6-7). The Commissioner argues that, at the hearing before the ALJ, Johnson did not object or seek to question the vocational expert about potential mental limitations. (*Id.* at 9).

Johnson replies that while a finding of mild limitations in mental functioning does not require the inclusion of mental limitations in the RFC, it does require that the ALJ address the limitations and explain why they were omitted from the RFC. (D.E. 11 at 1-4). Further, he argues that the ALJ only mentioned his mental functioning during the RFC analysis in the context of Johnson's subjective complaints, not in the context of the ALJ's own finding that he had limitations. (*Id.* at 4-5). Finally, Johnson argues that the Commissioner's argument regarding his failure to question the vocational expert is misplaced because he is challenging the ALJ's written decision, which was made after the hearing. (*Id.* at 6-7).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The burden has been described as more than a scintilla, but lower than a preponderance. *Id.* On review, the Court may not reweigh the evidence, and it is the ALJ's

8

responsibility to resolve conflicts in the evidence, not the Court's. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez*, 64 F.3d at 173-174; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

The second step of the sequential analysis requires that the factfinder decide whether the claimant's impairment is "severe," irrespective of age, education, and work experience. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). In evaluating mental impairments, the ALJ must determine a claimant's degree of functional limitation in four broad functional areas, including their ability to: (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage themselves. 20 C.F.R. § 404.1520a(c). These are the Paragraph B criteria. 20 C.F.R., Part 404, Subpt. P, App'x 1, 12.00E, F(2)(B). The ALJ must rate the claimant's degree of functional limitation on a five-point scale including none, mild,

moderate, marked, or extreme.  *Id.*  If the claimant's degree of limitation is "none" or "mild," it will typically be non-severe.  *Id.* § 404.1520a(d).

RFC, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations.  20 C.F.R. § 404.1545(a); *Perez*, 415 F.3d at 461-62.  When assessing a claimant's RFC, the ALJ must consider all relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  When creating the RFC, the ALJ must consider all a claimant's medically determinable impairments, even those that are non-severe.  *Id.* § 404.1545(a)(2).  "[T]he determination of residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).  The "limitations identified in the 'paragraph B' … criteria are not an RFC assessment," and instead the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments."  SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id.* at *7.

As stated by the Tenth Circuit, "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."  *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013).  In *Wells*, the ALJ found that the claimant

had mild limitations in three of the four Paragraph B criteria and found her mental impairments to be non-severe. *Id.* at 1068. In the RFC discussion, the ALJ "reiterated his conclusion that the mental impairments were non-severe." *Id.* at 1069. The Tenth Circuit noted that the "language used suggests that the ALJ may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments," which was "inadequate under the regulations and the Commissioner's procedures." *Id.* Where an ALJ fails to properly explain why mental limitations were omitted from the RFC assessment and concludes at step four that the claimant can return to past skilled work, harmful error occurs and remand is appropriate. *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489-90 (W.D. Tex. 2022); *Deacon v. Kijakazi*, No. SA-23-CV-00317-ESC, 2023 WL 8856051, at *6 (W.D. Tex. Dec. 21, 2023).

Here, although the ALJ briefly discussed the medical opinion evidence regarding Johnson's mental impairments during the RFC assessment, the ALJ merely referenced the severity standard again and it is not evident from the opinion that he conducted the "more detailed assessment" necessary during the RFC assessment. SSR 96-8P, 1996 WL 374184 at *4. Johnson does not dispute the evidence in the record, dispute the ALJ's conclusion at step two that his mental impairments are non-severe and only cause mild limitations, or argue that the ALJ was required to include mental limitations in the RFC. Instead, Johnson contends that the ALJ did not follow the proper legal procedure when he failed to explain why he included no mental limitations in the RFC despite finding mild limitations in the

11

four areas of mental functioning earlier in the sequential evaluation. (*See generally* D.E. 7, 11).

Johnson is correct that the ALJ must consider every medically determinable impairment when making the RFC determination, including those found to be non-severe, and his conclusion must be supported by substantial evidence. 20 C.F.R. § 404.1545(a)(2). The ALJ briefly discussed the evidence in the record regarding Johnson's mental impairments during the RFC assessment. First, in relation to Johnson's subjective complaints, the ALJ concluded that the medical evidence showed "few objective findings to support decreased mental or physical functioning." (D.E. 6 at 24). Second, in relation to the medical opinion evidence, the ALJ concluded that Dr. Regets's opinion on initial consideration was unpersuasive and Dr. Grubbs's opinion on reconsideration was persuasive. (*Id.* at 27). Specifically, the ALJ stated that Dr. Grubbs "found [Johnson] to have no severe mental impairments," which was "consistent with [Johnson's] reports that medication management was effective and is supported by [the] lack of severe deficits in memory, concentration, insight, and judgement." (*Id.*).

As in *Wells*, despite finding that Johnson's mental impairments were medically determinable, meaning they must be considered in the RFC assessment, the ALJ did not provide a narrative discussion describing how the evidence supported his conclusion that no mental limitations were necessary. Instead, he supported his conclusion by reiterating his step two conclusion that Johnson's impairments were non-severe. (D.E. 6 at 24, 27); SSR 96-8P, 1996 WL 374184 at *4. The "language used suggests that the ALJ may have

relied on his step-two findings to conclude that [Johnson] had no limitation based on [his] mental impairments," which is "inadequate under the regulations and the Commissioner's procedures." *Wells*, 727 F.3d at 1069. As the Social Security Administration has noted, and as the ALJ himself noted in boilerplate language in his decision, the RFC assessment is not the same as the step two assessment and requires a more detailed analysis. (D.E. 6 at 23); SSR 96-8P, 1996 WL 374184 at *4. Without the required analysis, the ALJ's conclusion that no mental limitations were necessary in the RFC determination is not supported by substantial evidence.

Notably, the ALJ favorably cited Dr. Grubbs's opinion on reconsideration, but this opinion is internally inconsistent regarding whether Johnson has a severe mental impairment. First, in the section of his opinion titled "Findings of Fact and Analysis of Evidence," Dr. Grubbs addressed Johnson's alleged mental impairments and stated: "No new allegations. No worsening conditions. No new sources. Recon affirmation with initial findings." (*Id.* at 85).[2] Consistent with Dr. Regets's opinion on initial review, Dr. Grubbs's opinion then listed inflammatory arthritis and depressive, bipolar, and related disorders as Johnson's two medically determinable impairments, and stated that both were severe. (*Id.* at 68, 85). Dr. Grubbs diverged from Dr. Regets in finding that Johnson had only a mild limitation in his ability to interact with others, but otherwise agreed that Johnson had mild limitations in the other areas of mental functioning. (*Id.* at 69, 86). However, in the space

---

[2] Although the citation format used in the ALJ's decision is different from the format used in this memorandum, the ALJ cites to exhibit 4A when discussing Dr. Grubbs's opinion, which is contained in D.E. 6 from pages 83 to 90 in the current record.

for additional explanation, Dr. Grubbs stated that Johnson's mental "impairment does not appear severe at this time given available evidence presented through [medical records]." (*Id.* at 87). Consistent with this statement, Dr. Grubbs did not conduct a mental RFC assessment. (*Id.* at 88-89). Thus, in his opinion, Dr. Grubbs stated that Johnson's mental impairments were both severe and non-severe, and further stated that his analysis affirmed Dr. Regets's initial findings, but then reached different conclusions.

The ALJ is required to consider all medically determinable impairments when assessing a claimant's RFC and, if no limitations are included for a particular impairment, include some explanation for their absence that is supported by substantial evidence. *Wells*, 727 F.3d at 1068-69; SSR 96-8P, 1996 WL 374184 at *4; 20 C.F.R. § 404.1545(a)(2). Although the ALJ briefly discussed Johnson's mental impairments when assessing his RFC, the contents of that discussion do not show that he conducted the more detailed assessment necessary during the RFC assessment, and the one medical opinion that he found persuasive was internally inconsistent. Moreover, this error was harmful because the ALJ then concluded that Johnson could return to past skilled work, and remand for further consideration is appropriate. *Castillo*, 599 F. Supp. 3d at 489-90; *Deacon*, 2923 WL 8856051 at *6.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that Johnson's motion (D.E. 7) be **GRANTED**, the Commissioner's motion (D.E. 8) be **DENIED**, and the Commissioner's

denial of disability benefits be **REVERSED AND REMANDED** for further consideration.

Respectfully submitted on June 25, 2024.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C § 636(b)(1).